**INDIANA HIGH SCHOOL ATHLETIC ASSOCIATION, INC., Bob Gardner, In his capacity as Commissioner of the Indiana High School Athletic Association, Inc., and Mary Keefer, in her capacity as Principal of Bishop Luers High School, Appellants–Defendants,**

v.

**Jessah MARTIN, Appellee–Plaintiff.**

No. 02A03–0001–CV–029.

Court of Appeals of Indiana.

Dec. 29, 2000.

Robert M. Baker III, Johnson, Smith, Pence & Heath, LLP, Indianapolis, Indiana, Attorney for Appellants.

Edward L. Murphy, Jr., Stefanie R. Crawford, Miller Carson Boxberger & Murphy, LLP, Fort Wayne, Indiana, Attorneys for Appellee.

## OPINION

SULLIVAN, Judge

Appellant, Indiana High School Athletic Association, Inc. (IHSAA), appeals the trial court's judgment finding it in contempt of court and imposing an assessment against it as a result of the contempt finding.

We affirm.

Upon appeal, the IHSAA asserts several challenges to the trial court's judgment which we restate as follows:

(1) Whether the trial court erred when it found the IHSAA in contempt; and

(2) Whether the trial court imposed an inappropriate assessment as a result of the finding of contempt.

1. The IHSAA and its Commissioner Bob Gardner appealed the propriety of the preliminary injunction in Appeal No. 02A03–9912–CV–460, wherein this court upheld the trial court order granting the preliminary injunction. *Indiana High School Athletic Ass'n, Inc. v. Martin* (2000) Ind.App., 731 N.E.2d 1, *reh'g denied.* Transfer of that appeal to the Indiana Supreme Court is currently pending. In the second appeal, Mary Keefer, principal of Bishop Luers High School, also appealed the preliminary injunction in Appeal No. 02A05–9912–CV–574. This appeal was subsequently dismissed. In the fourth appeal, Appeal No. 02A05–0005–CV–178, the IHSAA appealed the trial court's award of attorney fees to Martin as a result of the IHSAA's contempt. In a separate opinion issued today, we conclude that the trial court did not abuse its discretion in awarding Martin attorney fees as a result of the IHSAA's contempt. *Indiana High School Athletic Ass'n v. Martin, Inc.* (2000) Ind.App., 741 N.E.2d 775.

2. Rule 19–6.2 provides the IHSAA with authority to declare limited eligibility for a stu-

## I

### *Facts and Procedural History*

This appeal represents the third appeal arising out of the issuance of a preliminary injunction against the IHSAA, its Commissioner Bob Gardner, and Bishop Luers High School and in favor of Martin.[1]

The facts, as set forth in *Indiana High School Athletic Ass'n v. Martin, supra,* 731 N.E.2d 1, reveal that Jessah Martin lived with her parents and attended Bellmont High School (Bellmont) during her freshman, sophomore and junior years. During this time, Martin's relationship with her parents had seriously deteriorated. In order to escape her dysfunctional home environment, once she turned eighteen, and prior to starting her senior year, Martin moved from her parents' home and transferred to Bishop Luers High School (Luers) where she planned to participate on the varsity girls' basketball team. Both Luers and Bellmont High Schools were members of the IHSAA and were located within the same public school district. Accordingly, IHSAA Associate Commissioner Ray Craft imposed Transfer Rule 19–6.2[2] and granted Martin only junior varsity eligibility at Luers.[3] Martin appealed this

dent who changes schools without a corresponding change of residence by the student's parent(s)/guardian(s).

3. We note that while the manual cover of the 1999–2000 By-laws and Articles of Incorporation of the IHSAA was copied and included in the record, the contents of the manual, and consequently the IHSAA rules, were not. Both the Appellant and the Appellee quote from and cite to the IHSAA By-laws and to its rules to support their arguments. Pursuant to Ind. Evidence Rule 201, we may take judicial notice of a fact that is "not subject to reasonable dispute." Evid. R. 201 further provides that we "may take judicial notice, whether requested or not ... at any stage of the proceeding." Here, the parties have not *presented us with differing versions of the* rules. In addition, neither party argues that the IHSAA rules do not apply in this case. We find that the contents of the 1999–2000 By-laws and Articles of Incorporation of the IHSAA are not in dispute and take judicial notice thereof.

decision and a hearing was held before the IHSAA's Executive Committee on September 9, 1999.[4] The Executive Committee upheld the Associate Commissioner's decision and granted Martin only limited junior varsity eligibility for a period of 365 days following the date of her last interscholastic participation at Bellmont.

On November 4, 1999, Martin filed a verified complaint seeking declaratory judgment, and preliminary and permanent injunctions. The complaint requested that the IHSAA, Bob Gardner in his capacity as Commissioner of the IHSAA (Gardner), and Mary Keefer in her capacity as Principal of Luers (Keefer), be preliminarily and permanently enjoined from enforcing the decision of the IHSAA which held Martin to be ineligible to participate in varsity level athletics.

On November 22, 1999, the trial court held a hearing on Martin's request for injunctive relief, and on November 29, 1999, granted Martin's request for a preliminary injunction. The preliminary injunction read as follows:

> IT IS FURTHER ORDERED, ADJUDGED, AND DECREED that the Defendants, the Indiana High School Athletic Association, Inc.; Bob Gardner, in his capacity as Commissioner of the Indiana High School Athletic Association, Inc.; and Mary Keefer, in her capacity as Principal of Bishop Luers High School; and their officers, agents, representatives, employees, and attorneys, and all persons in active concert or participation with them, be and they are hereby temporarily ENJOINED AND RESTRAINED from attempting to enforce, implement or carry out in any manner, directly or indirectly, the decision of the Commissioner of the Indiana High School Athletic Association, Inc. and the ruling of the Executive Committee of the IHSAA upholding said decision, which decision and ruling are to the effect that plaintiff, Jessah Martin, is ineligible to participate in varsity interscholastic athletics at and on behalf of Bishop Luers High School for a period of one year commencing with her enrollment at Bishop Luers High School.
>
> IT IS FURTHER ORDERED, ADJUDGED, AND DECREED AND DECLARED that upon the evidence submitted at the hearing of the Executive Committee on September 9, 1999, Jessah Martin is eligible under the rules of the IHSAA to immediately participate in varsity interscholastic athletics at Bishop Luers High School. Record at 262–63.

Because Martin had gained the ability to participate in varsity-level athletics pursuant to a court order, the IHSAA was authorized by its By–Laws to apply its Restitution Rule[5] to Luers if the preliminary

---

4. The IHSAA Executive Committee consists of twelve senior members of the IHSAA Board of Directors. Members of the Board of Directors are school personnel who are elected and represent the member schools from each of the five IHSAA districts.

5. The Restitution Rule, Rule 17–6 of the By-laws of the IHSAA, addresses the issue of student athlete participation pursuant to court action and reads as follows:

"If a student is ineligible according to Association Rules but is permitted to participate in interschool competition contrary to Association Rules but in accordance with the terms of a court restraining order or injunction against the student's school and/or the Association and the injunction is subsequently voluntarily vacated, stayed, or reversed or it is finally determined by the courts that injunctive relief is not or was not justified, any one or more of the following action(s) against such school in the interest of restitution and fairness to competing schools shall be taken:

a. Require individual or team records and performances achieved during participation by such ineligible student be vacated or stricken;

b. Require team victories be forfeited to opponents;

c. Require team or individual awards earned be returned to the Association; and/or

d. If the school has received or would receive any funds from an Association tournament series in which the ineligible individual has participated, require the school forfeit its share of net re-

injunction were later overturned and Martin ultimately found to be ineligible for varsity-level athletics. Luers, fearing the ramifications of the Restitution Rule, determined that Martin should not be allowed to participate. Because Martin was still not competing in varsity sports after the preliminary injunction was issued, she filed a verified petition for contempt requesting that the trial court find the IHSAA and Bob Gardner in contempt for failure to comply with the preliminary injunction as Martin was being denied the relief the trial court had granted her.

At the contempt hearing, Martin contended that the IHSAA was in contempt for failing to waive its Restitution Rule, claiming that the adverse consequences of the Rule caused Luers to decide that Martin should not be allowed to participate, which produced the same effect as would the IHSAA's enforcement of its limited eligibility decision under the Transfer Rule. The IHSAA contended that it was not specifically ordered to waive its Restitution Rule, that Martin did not follow the proper administrative procedures to request waiver of the Restitution Rule, that mere existence of the Restitution Rule could not constitute contempt because the Restitution Rule had been determined to be a valid, enforceable rule, and that even though the Restitution Rule might have an indirect effect of causing the school to decide not to allow Martin to participate, it was the school's decision whether or not she participated.

During the hearing, IHSAA Assistant Commissioner Theresia Wynns testified in response to the question of whether the IHSAA was willing to waive the Restitu-

tion Rule. Wynns stated, "At this point we would have to consider all the information and determine if there were compelling evidence to waive that rule." Record at 342. According to Wynns, schools are familiar with the IHSAA's rules, should be aware of the Restitution Rule, and based on this awareness "make decisions themselves." Record at 343. Wynns responded to a question concerning the "chilling effect" of the Restitution Rule on schools by stating that she was "sure that they have considered [the Restitution Rule], but I cannot say that it has a chilling effect ... I cannot give a degree of effect on that particular school." Record at 344. Wynns further testified that a school with the potential for winning a State championship would consider the Restitution Rule and agreed that a student might never receive the benefit of an injunction if a school chose not to allow the student athlete to participate because of the Restitution Rule. Concerning the detrimental effect of the Restitution Rule, Wynns further testified:

Q ..... is it your position that the Restitution Rule does not have any detrimental effect on Bishop Luers' decision to play Jessah Martin, is that correct?

A. It is my judgment that the Restitution Rule is out there, whether or not Bishop Luers is considering that in their decision, I cannot answer that.

Q. If they considered it, would you admit it would be a detriment to playing her?

A. If they considered it, it might be.

ceipts from such competition, and if said receipts have not been distributed, authorize the withholding of such receipts by the Association." Record at 283.

In conjunction with Rule 17–6, Rule 3–9 requires the member school's principal to take certain actions once it is determined that an ineligible student participated. The actions differ depending upon the sport played and whether the contests in question took place

during the season or during an IHSAA tournament. Thus, if Martin were found to have participated while ineligible, Luers' Principal would have been required to disqualify Martin and forfeit all games and individual awards obtained during season contests; and, for tournament contests, been required to disqualify Martin, but let the team advance. However, state championship or runners-up titles as well as all team and individual tournament awards would be vacated.

Q. Can you tell me how it could possibly be anything other than a severe detriment?

\* \* \*

Q .... can you tell me any effect that Restitution Rule would have on Bishop Luers' decision to play Jessah Martin, other than it being detrimental?

A. I cannot tell you any other effect that it would have. Record at 352.

According to Wynns, the value of the assets held by the IHSAA at the time of the hearing was $7,363,357.77, and the IHSAA currently had cash assets of $279,611.86. Wynns also stated that she knew of no cases where the IHSAA had failed to use the Restitution Rule when a preliminary injunction was overturned upon appeal.

Gary Andrews, the girls' basketball coach at Luers, also testified during the contempt hearing. According to Andrews, Martin had not been allowed to dress for any of the varsity basketball games even after the preliminary injunction was issued. Andrews testified that Martin had the ability to participate on the varsity girls' basketball team at Luers. When asked why Martin wasn't playing, Andrews responded, "They [IHSAA] still have the Restitution Rule." Record at 363. Andrews stated that since the team was "eleven and 0" they could not risk having to forfeit the games. Record at 363. According to Andrews, Martin would be playing were it not for the threat of the Restitution Rule; that the "main reason" she was not playing was because "there [was] still that Restitution Rule." Record at 367.

Harry Miller, the former assistant basketball coach who allowed Martin to move in with his family after she left her parents' home, testified that Martin was not at the hearing because she was seeing a counselor in Ohio after suffering an anxiety attack while at school. According to Miller, Martin's "outlook" improved and she was "a little more her old self" after the injunction was issued, but that she was soon disappointed when she realized that she might not ever have the opportunity to play. Record at 375. Miller further testified that Luers' principal decided that the school could not risk having to forfeit the games in which Martin participated.

■ The trial court took the issue of contempt under advisement and on January 21, 2000, issued its Order or Judgment of the Court (Contempt Judgment) in which the court, sua sponte, made the following specific findings:

9. Wynns testified in virtually every case, the IHSAA appeals preliminary injunctions.

\* \* \*

11. Theresa Wynns testified in every case where a court's Injunction Order has been reversed, the IHSAA has enforced the Restitution Rule.

12. Bishop Luers High School is the defending 2A State Champion in girls' varsity basketball.

13. Theresa Wynns testified Bishop Luers would consider the Restitution Rule in their decision whether to play Jessah Martin.

\* \* \*

15. Theresa Wynns testified the current assets held by the IHSAA as of November of 1999, was seven million, three hundred sixty three thousand, three hundred fifty seven dollars and seventy seven cents ($7,363,357.77) and that of those assets, the amount available in cash was two hundred seventy nine thousand, six hundred eleven dollars and eighty six cents ($279,-611.86).

\* \* \*

18. Jessah Martin has not been permitted to play or dress for any varsity games.

19. Gary Andrews testified Jessah Martin has the ability to play for the varsity Bishop Luers girls' basketball team.

20. As of January 5, 2000, the Bishop Luers girls' varsity basketball team had eleven wins and no losses.

21. Bishop Luers determined that it could not take the risk of forfeiture of its games by playing Jessah Martin in light of the Restitution Rule.

22. Gary Andrews testified if it were not for the Restitution Rule, Jessah Martin would be permitted to play girls' varsity basketball.

\* \* \*

24. Gary Andrews testified Bishop Luers High School is "worried" they may have to forfeit any games in which Jessah Martin participated.

25. Gary Andrews testified, "There is always the Restitution Rule. I do not have the right to play Jessah. I am worried about the Restitution Rule."

26. As a result of Jessah Martin not being permitted to play, she has been upset and anxious.

27. Gary Andrews testified Jessah Martin has the ability to play collegiate basketball and to receive athletic scholarships.

28. As a result of Jessah Martin not being permitted to play, colleges have not had the opportunity to observe Jessah in competition or to assess her collegiate ability.

29. Jessah Martin will suffer an inability to obtain scholarships as a result of the IHSAA's actions.

30. Jessah Martin has suffered both emotional and financial harm. Record at 298–99.[6]

In its judgment, the trial court determined that the IHSAA was in contempt of the preliminary injunction, and found that the preliminary injunction was specific, that the IHSAA had actual knowledge of the injunction, that the IHSAA had purposefully and knowingly violated the preliminary injunction, and that the violation took place during the time the preliminary injunction was in effect. The trial court specifically found that the IHSAA "willfully and contemptuously disregarded [the trial court's] [o]rder by forcing [Luers] to comply with the IHSAA's original decision that Jessah Martin is ineligible to participate in varsity interscholastic athletics," and found that the IHSAA had failed to show that the violation was not willful.

---

**6.** We would observe that to the extent the trial court merely recited that a particular witness testified to one thing or another, such recitation does not constitute a finding of fact. *See Perez v. United States Steel Corp.* (1981) Ind., 426 N.E.2d 29.

Here, neither party requested special findings. Although Trial Rule 52(A)(1) requires that the trial court in granting a preliminary injunction, must make special findings of fact whether or not one of the parties has requested, it is important to note that the matter under appeal was a contempt determination, not the decision on the underlying injunction.

Therefore, those gratuitous "findings" made by the court, which merely recite testimony, do not control resolution of the question as to whether the conclusions reached and the judgment entered accordingly, are supported by the evidence. *See National Oil & Gas, Inc. v. Gingrich* (1999) Ind.App., 716 N.E.2d 491 (when trial court enters findings of fact on its own motion, the specific findings control only as to issues they cover while the general judgment standard of review governs as to any issue upon which the court has not found). The recitations of evidence or testimony in this case therefore are not true findings and do not control. With respect to such issues we presume that the judgment is based upon findings supported by evidence. *See Red Arrow Ventures, Ltd. v. Miller* (1998) Ind. App., 692 N.E.2d 939, *overruled on other grounds by Scott v. Randle* (1998) Ind.App., 697 N.E.2d 60, *trans. denied.* This is nothing more than application of the general judgment standard of review.

Having so stated, we would observe that statements in the nature made here by the trial court, while not controlling, "lend perspective to our task." *Perez, supra,* 426 N.E.2d at 33. Such statements are an indication that the trial court afforded some probative value to the testimony set forth and may serve as some enlightenment in assessing the judgment of the trial court in light of the evidence adduced at trial.

Record at 301. The trial court further determined that because the IHSAA enforces the Restitution Rule in every action where an injunction is reversed, a school might decide not to comply with an injunction for fear of the Restitution Rule's effect if the preliminary injunction is later overturned. Specifically, the trial court determined that "[b]y virtue of the IHSAA's 'threat', the school is forced to violate the Court's Order and comply with the original IHSAA decision. This mechanism has been knowingly and willfully utilized by the IHSAA in the matter before this court." Record at 300.

In addition, the trial court also concluded that Martin had suffered both emotional and financial harm and assessed the IHSAA $500.00 per day for so long as it remained in contempt of the preliminary injunction. The trial court did, however, allow the IHSAA to purge itself of contempt by specifically waiving enforcement of the Restitution Rule as it would be applied to Martin. This appeal ensued.

At Martin's request, oral argument was held before this court on August 17, 2000. During oral argument it was revealed that Luers allowed Martin to play after her one-year period of limited junior varsity eligibility expired, but that the IHSAA never waived its Restitution Rule.

## II

### Athletics in Education

We note, initially, that our Indiana Supreme Court has recognized athletics as "an integral part of this constitutionally-mandated process of education." *Indiana High School Athletic Ass'n, Inc. v. Carlberg* (1997) Ind., 694 N.E.2d 222, 229. Justice Dickson, in his separate opinion, identified the clear benefits athletics can provide when he observed that,

"Physical fitness lowers mortality rates, promotes cardiovascular and muscular fitness, generates a general feeling of well-being, and reduces the symptoms of depression and anxiety. The 'potentially positive outcomes of organized sport competition' have been documented. Among these outcomes are enhanced decision-making skills, self-image, character, morality, independence, and opportunities for youth to experience a sense of achievement. . . . Athletics can also be an avenue for economically underprivileged students to attend college on a scholarship when they might not otherwise afford to do so. The availability of such scholarships is significant. Schools participating in Division I of the NCAA spent an average of almost one-and-a-half million dollars per school in athletic scholarships for the academic year 1993–94." *Id.* at 243–44 (citations omitted).

We further note, as did the majority opinion in Carlberg, that membership in the IHSAA does not reflect a voluntary choice for student athletes in the public school system and that these athletes have "no voice in its rules or leadership." *Carlberg, supra,* 694 N.E.2d at 230. The four years these student athletes spend in high school is "relatively short . . . compared to the amount of time often required for institutional policies to change." *Id.* Student athletes, by virtue of their high school's membership in the IHSAA, are required to conform to the eligibility and participation requirements ultimately established by the IHSAA and set forth in its Rules and By-laws. Thus, while students have a constitutional right to an education, of which athletics is an integral part, they have no right to participate in the rule-making process which governs their participation in high school athletics if their high school is a member of the IHSAA.

Here, we are presented with a challenge, not to IHSAA action, but to IHSAA inaction. In what appears to be a unique if not novel situation, school officials have, contrary to a trial court's preliminary injunction, ultimately decided to disallow a student athlete the right to participate in a sport for which she is otherwise athletically qualified, because these officials fear the threat of the IHSAA's Restitution Rule.

IHSAA rules allow a student to participate in athletics by virtue of a court order or injunction. However, as a result of the Restitution Rule's very real threat, this student athlete was denied the relief granted by the preliminary injunction. In effect, the IHSAA's Restitution Rule has produced the same result for this student athlete as if the IHSAA were enforcing its eligibility decision under its Transfer Rule—Martin is not playing varsity basketball.

## III

### Contempt

The trial court has discretion to determine whether or not a party is in contempt. *Crowley v. Crowley* (1999) Ind. App., 708 N.E.2d 42, 51. We will reverse the trial court's finding "'only if it is against the logic and effect of the facts and circumstances before the court and any reasonable inferences arising therefrom.'" *Id.* (quoting *Crowl v. Berryhill* (1997) Ind. App., 678 N.E.2d 828, 830). The trial court's contempt judgment will be affirmed unless, after reviewing the entire record, "'we have a firm and definite belief a mistake has been made by the trial court.'" *Williamson v. Creamer* (2000) Ind.App., 722 N.E.2d 863, 865 (quoting *In re Marriage of Glendenning* (1997) Ind. App., 684 N.E.2d 1175, 1179). Here, the trial court, sua sponte, entered specific findings of fact and conclusions of law. As noted earlier, a general judgment standard applies to any issue upon which the court has not entered appropriate findings of fact. We may affirm upon any legal theory that is supported by the evidence. *Gingrich, supra,* 716 N.E.2d at 495.

The IHSAA's main contention is that the trial court improperly found it in contempt of the preliminary injunction. Specifically, the IHSAA argues that the preliminary injunction did not order the IHSAA to waive the Restitution Rule, that the IHSAA could not have waived the Restitution Rule because Martin had not exhausted her administrative remedies,

that the Indiana Supreme Court has found the Restitution Rule to be valid and therefore its failure to waive the Rule may not be the basis for contempt; and further, that the IHSAA did not willfully violate the preliminary injunction.

### A.

### Clear and Certain Order

Indirect contempt is the willful disobedience of any lawfully entered court order of which the offender had notice. *Meyer v. Wolvos* (1999) Ind.App., 707 N.E.2d 1029, 1031, *reh'g denied, trans. denied.* The order must be "clear and certain" such that there is no question what a party may or may not do and no question regarding when the order is being violated. *Gordon v. Gordon* (2000) Ind.App., 733 N.E.2d 468, 472. A party may not be held in contempt for failing to comply with an ambiguous or indefinite order. *Rendon v. Rendon* (1998) Ind.App., 692 N.E.2d 889, 896.

The IHSAA contends that it may not be held in contempt because the trial court injunction did not specifically mention or require waiver of the Restitution Rule. In support of this contention, the IHSAA cites *Martinal v. Lake O' The Woods Club, Inc.* (1967) 248 Ind. 252, 225 N.E.2d 183. In *Martinal*, the trial court entered a judgment which read, in pertinent part, "Plaintiff [is] granted a permanent injunction as prayed for in paragraph one of plaintiff's complaint." *Id.* at 184. Upon appeal, the *Martinal* court determined that the judgment was "too vague and uncertain" and "not sufficiently definite and certain to bind a party upon whom it is served." *Id.*

Here, the trial court ordered specifically that the IHSAA and Bob Gardner be temporarily "enjoined and restrained from attempting to enforce, implement or carry out in any manner, directly or indirectly" the decision which, in effect, held Martin to be ineligible to participate in

varsity athletics at Luers. Record at 263. In addition, the trial court specifically ordered that Martin was immediately eligible, "under the rules of the IHSAA," to participate in varsity athletics at Luers. Record at 263. We find the facts present in this case to be unlike those in *Martinal.* In *Martinal,* the trial court order gave no indication of the conduct prohibited. To comply with the *Martinal* injunction, in fact to even ascertain some notion of what the injunction dealt with, the parties had to look to other documents. Here, the court order forbade direct or indirect action which would have prevented Martin from playing varsity athletics for Luers during the period for which the IHSAA had previously determined she was ineligible. The order in the present case was clear: neither the IHSAA nor its Commissioner, Bob Gardner, was to "carry out in any manner, directly or indirectly" the decision which had the effect of keeping Martin from playing varsity athletics at Luers. Record at 263. This order was not ambiguous; neither was it indefinite in its command. Rather, it was sufficiently certain to allow the IHSAA to ascertain what it could or could not do. The evidence supports the trial court's determination that the preliminary injunction was sufficiently specific.

### B.

### *Exhaustion of Administrative Remedies*

■ The IHSAA next contends that it could not have waived the Restitution Rule because Martin had not yet exhausted her administrative remedies with respect to that Rule. This contention is erroneous for several reasons. First, this case arises from the initial decision by IHSAA Associate Commissioner Ray Craft that Martin be granted only limited junior varsity eligibility for athletics at Luers. Martin appealed this decision pursuant to the

IHSAA rules and was again granted only limited junior varsity eligibility, this time by the IHSAA's Executive Committee. Thereafter, Martin sought relief by filing a verified complaint for declaratory relief and for preliminary and permanent injunctions with the Allen County Superior Court. The trial court granted Martin's request for a preliminary injunction, finding that the IHSAA had acted in an "arbitrary and capricious" manner. Record at 261. Thus, Martin had exhausted her administrative remedies concerning her transfer status and varsity level eligibility prior to requesting relief from the trial court.

■ Second, the exhaustion doctrine applies only after there has been an administrative decision from which an individual could bring an administrative appeal. *Area Plan Comm'n of Evansville v. Major* (1999) Ind.App., 720 N.E.2d 391, 396–97, *reh'g denied* (holding that there had been an administrative decision where the area plan commission issued a letter informing that an improvement location permit had been denied); *T.W. Thom Constr. v. City of Jeffersonville* (1999) Ind. App., 721 N.E.2d 319, 322 (finding that there was no administrative decision when the building commissioner referred an application to another agency, without approving or disapproving the application). The IHSAA's appeal procedures apply after the IHSAA makes a decision.[7] In this case, the IHSAA had not yet made the decision to implement the Restitution Rule because Martin had not yet played. The only decisions the IHSAA had made concerning Martin dealt with her status as a transfer student and the level of eligibility she had obtained under the provisions of the Transfer Rule. The IHSAA's contention that Martin could not have sought judicial review of an alleged administrative ruling until she had exhausted her avail-

---

7. In general, Rule 17 deals with investigations, hearings, decisions, appeals, penalties and hardship. In particular, Rule 17–4.1, "Right to Review Committee," states that

"any affected party may appeal a *decision* of the Commissioner or his designee." (emphasis added).

able administrative remedies is without merit as there was, in this case, no administrative ruling or decision concerning the Restitution Rule from which Martin could have appealed. While the IHSAA rules do provide for appeal of a decision of the IHSAA's Commissioner or his designee once a decision has been made, the IHSAA points us to no specific rule which would have required Martin to *initiate* a request for waiver of the Restitution Rule through an administrative procedure.

## C.

### *Validity of the Restitution Rule*

The IHSAA dedicates a substantial portion of its brief to refuting what it considers to be a "challeng[e] [to] the validity of the restitution rule." Appellant's Brief at 15. The IHSAA appears to argue that it cannot be held in contempt for failing to waive the Restitution Rule, because our Supreme Court has determined that the Restitution Rule is not manifestly unreasonable and does not impinge upon the judicial function of the courts. However, to hold that a failure to act is not contemptuous merely because to act would render inapplicable a valid IHSAA rule would rob an injunction or restraining order of its meaning. Injunctions are equitable remedies. *Northern Indiana Public Service Co. v. Dozier* (1996) Ind.App., 674 N.E.2d 977, 989 (preliminary injunctions are within the equitable discretion of the trial court); *McGlothen v. Heritage Envtl. Serv., L.L.C.* (1990) Ind.App., 705 N.E.2d 1069, 1073 (grant or denial of a preliminary injunction rests within the trial court's equitable discretion). As such, prohibitory preliminary injunctions are court orders which restrain acts that interfere with the rights of the party in whose favor the injunction is granted. *Elder v. City of Jeffersonville* (1975) 164 Ind.App. 422, 329 N.E.2d 654, *reh'g denied.* Thus, an injunction may, for equity's sake, make invalid an otherwise valid action, in order to protect the rights

of the party in whose favor the injunction is granted.

Here, the trial court's order was made for the benefit of Martin, to provide her with relief from the IHSAA's decision that she was ineligible for varsity level athletics. To fulfill the purpose and carry out the intent of the preliminary injunction, the trial court restrained both the IHSAA and Luers from directly or indirectly attempting to enforce, implement or carry out in any manner the IHSAA's decision which precluded Martin's participation in varsity athletics at Luers. While in practical terms, failing to waive the Restitution Rule meant that the IHSAA was "indirectly" attempting to enforce its decision, the trial court did not declare that the Restitution Rule was invalid. In fact, the trial court specifically stated during the contempt hearing that "the Restitution Rule is not unconstitutional .... [it] is still alive and well in the State of Indiana" and "[t]hat [the restitution rule] is not what this contempt is about. This contempt is about, whether or not you [the IHSAA] are using that Restitution Rule to prevent this girl [Martin] from playing basketball." Record at 336. Thus, the IHSAA's argument that the Restitution Rule is valid has no bearing upon our determination of whether or not the IHSAA was in contempt of the trial court's preliminary injunction.

### D.

### *Willful Violation*

The IHSAA next contends that it did not intend its Restitution Rule to serve as a deterrent to student participation. Specifically, the IHSAA argues that the evidence produced at trial failed to show that the IHSAA was intentionally using the Restitution Rule to enforce its eligibility decisions.

Before the trial court may hold a party in contempt for violating a court order, it must find that the party willfully disobeyed the court order. *Williamson,*

*supra,* 722 N.E.2d at 865. The party in contempt bears the burden of proving that he or she did not willfully violate the court's· order. *Meyer, supra,* 707 N.E.2d at 1031. Thus, the IHSAA had the burden of proving that it did not willfully violate the court's order.

At the contempt hearing, IHSAA Assistant Commissioner Theresia Wynns testified that to her knowledge, other schools have played their athletes after they are enjoined from enforcing eligibility decisions made pursuant to the Transfer Rule. Thus, the IHSAA argued that, because this was the first time in which a school elected not to play a student athlete pursuant to a court injunction, the IHSAA could not have possibly intended for its Restitution Rule to serve as a deterrent to student athlete participation. The IHSAA also argued that because the preliminary injunction did not specifically order the IHSAA to waive its Restitution Rule, the IHSAA did not willfully violate the injunction when it did not waive its Rule. Finally, the IHSAA contended that it could not be required to waive the Restitution Rule because the Indiana Supreme Court had determined that the Restitution Rule was valid and enforceable. Initially, we note that we have already decided the IHSAA's final argument in favor of Martin. We have also determined that the trial court's order was sufficiently specific to allow the IHSAA to ascertain what it could or could not do. Thus, the only remaining question is whether the IHSAA willfully violated the preliminary injunction.

■ "An injunction 'places a direct personal duty upon the defendant, and he [or she] is directly and personally responsible to the court for the accomplishment of the object of the order.'" *Hancz v.*

*City of South Bend* (1998) Ind.App., 691 N.E.2d 1322, 1324 (quoting *Denny v. State* (1932) 203 Ind. 682, 704, 182 N.E. 313, 320). In *Hancz,* a landlord was enjoined from "causing or allowing" his property to be occupied in violation of a vacate and seal order. *Hancz, supra* at 1323. The landlord gave his tenant notice to vacate the property; however, the tenant continued to occupy the house. The landlord told his apartment manager to "continue kind of prodding on the lady," and "just assumed that she would move, she'd leave." *Id.* at 1324. The *Hancz* court found the landlord in contempt, noting that the landlord did not accomplish the objective of the court order and that the landlord's "feeble efforts to remove the tenant did not amount to a reasonably diligent and energetic attempt to accomplish what was ordered." *Id.*

■ In this case, the preliminary injunction precluded any direct or indirect attempts to enforce, implement or carry out the IHSAA Commissioner and Executive Committee decisions "which decision[s] and ruling are to the effect that Plaintiff Jessah Martin is ineligible to participate in varsity interscholastic activities" and ordered that Martin was immediately eligible to participate in varsity interscholastic athletics at Luers. Record at 296. Thus, the objective of the trial court's order was that Martin be immediately eligible to participate in varsity athletics at Luers.

■ The trial court determined that the mechanism of contempt consisted of the Restitution Rule "coupled with the actions taken by the IHSAA in every [p]reliminary [i]njunction cause of action where it does not prevail." [8] Record at 299.

---

8. The IHSAA contends that filing an appeal cannot be grounds for contempt. We agree with this contention. However, we do not believe the trial court found that the IHSAA was in contempt solely because the IHSAA filed an appeal. Rather, we read the trial court's findings to mean that Luers was aware the IHSAA appealed every preliminary injunction and that, therefore, Luers was aware the Restitution Rule would be used against any player or school which allowed a student athlete to participate under a preliminary injunction if that injunction were overruled. Based on its knowledge of how this mechanism worked, Luers refused to allow Martin to participate. In this case, the conse-

The IHSAA is empowered, under Rule 17–7.1(c), to take the following action against a member school that violates or disregards a decision or directive provided by IHSAA rule: [9]

   c. A member school may be:

     (1) prohibited from certain interschool athletic participation; or

     (2) warned; or

     (3) fined, including the forfeiting of revenues generated from the Association; or

     (4) suspended or placed on probation for a period not to exceed 365 days by the Association.

Section 4(h) of the IHSAA's By-laws states that the powers and duties of the IHSAA's Executive Committee are to make and enforce the regulations necessary "to make effective the spirit, purpose and wording of the provisions of the By–Laws of the Corporation." Furthermore, IHSAA Rule C–3–7 allows the Commissioner or Executive Committee to impose appropriate sanctions upon member schools for violations of the rules set forth in the By–Laws.

The IHSAA specifically noted that the only way it can enforce its rules is through its membership. The IHSAA knew that the Restitution Rule would have a severe detrimental effect on Luers if it chose to allow Martin to participate, and that Luers would consider the Restitution Rule and

its detrimental effect prior to making any decision to allow Martin's participation. The trial court granted Martin a preliminary injunction because it determined that she met the requirements for hardship eligibility under IHSAA Rule 17–8.1.[10] Yet, Luers refused to acknowledge the trial court's decision, even though the decision was based on IHSAA Rule 17–8.1, and refused to let Martin participate in varsity girls' basketball. The IHSAA had authority to take action against Luers because Luers violated a decision made within the provisions of IHSAA rules, namely the court's determination that Martin met the IHSAA's own requirements for hardship eligibility and that she should be immediately eligible for varsity level athletics. Instead, the IHSAA chose to take no enforcement action against Luers for refusing to play Martin. The IHSAA believes it significant that the Restitution Rule had "never before been a deterrent of participation." Appellant's Brief at 14. However, the objective of the court's order was that Martin be allowed to play varsity girls basketball at Luers. Clearly the IHSAA had both the duty, under the trial court's preliminary injunction, and the ability, pursuant to its own Rules and By Laws, to take action to accomplish the trial court's objective. Like the efforts of the landlord in *Hancz*, the IHSAA's efforts in response

---

quences of the Restitution Rule were so severe as to compel Luers to refuse to allow Martin to participate, even though she had been granted varsity level eligibility pursuant to the preliminary injunction. The consequences of the Restitution Rule were especially daunting because Luers had the potential not only to excel in varsity girls basketball during its regular season but also to advance in the IHSAA post-season tournament.

**9.** As stated in footnote 3, we have taken judicial notice of the IHSAA's bylaws. Martin acknowledges that the IHSAA imposes duties and responsibilities upon the principals and coaches of its member schools. Further, the IHSAA acknowledges that the member schools have agreed to abide by and be responsible for enforcement of the IHSAA's eligibility rules and that the only way its rules

can be enforced is through its members. The Appellant and Appellee acknowledge that the IHSAA imposes duties and responsibilities upon principals and coaches and that all member schools have agreed to abide by these rules.

**10.** The IHSAA's "hardship" rule provides that the IHSAA may set aside the effect of, in this case, the Transfer Rule if strict enforcement of the Rule would not accomplish the Rule's purpose, if the spirit of the Rule has not been violated, and if the circumstances are such that an undue hardship would result from strict enforcement of the Rule. IHSAA Rule 17–8.1. To constitute an "hardship" the conditions which cause a rule to be violated "must be beyond the control of the school, the coach, the student, the parents and/or the affected party." IHSAA Rule 17–8.4(a).

to the trial court's preliminary injunction did not constitute a reasonably diligent or energetic attempt to ensure that Martin was allowed the opportunity to participate in varsity girls' basketball at Luers. The contempt, in this case, lies in the IHSAA's failure to take any action to give effect to the objective of the trial court's preliminary injunction.

The dissent takes the position that the trial court could not have ordered the IHSAA to waive its Restitution Rule. However, a close review of the Contempt Judgment reveals that the trial court did not order the IHSAA to waive its Restitution Rule, but merely allowed it to do so to purge itself of the contempt. Specifically, the Contempt Judgment stated that "the IHSAA *may* purge itself of contempt by specifically waiving the enforcement of Rule 17–6, the Restitution Rule, with respect to Jessah Martin." Record at 263. (emphasis supplied). Thus, if the IHSAA elected to waive its Restitution Rule, it would have purged itself of contempt by giving effect to the objective of the trial court's preliminary injunction. The IHSAA also could have fined Luers or otherwise taken action against the school leaving the Restitution Rule in place. Thus, the language of the Contempt Judgment could have been more broad, allowing the IHSAA to purge itself of contempt through any actions authorized under its Rules and By Laws or by any other action which would have fulfilled the objective of the preliminary injunction. Therefore, it was not error for the trial court to allow the IHSAA to purge itself of contempt by waiving its Restitution Rule.

■ The IHSAA also argues that the trial court failed to consider that the reason Martin was not participating was because *Luers* had made the decision not to follow the preliminary injunction. Clearly, Luers was violating the court's preliminary injunction by failing to allow Martin to be part of the varsity team. Once a high school joins the IHSAA, it agrees to be bound by its rules. Thus, the IHSAA

argues that "[i]f the student has a beef, its [sic] with the school, not the IHSAA." Appellant's Brief at 14. However, "[i]t is a settled principle that the fact other persons are violating a law in the same manner ... is not available as a matter of justification or excuse." *Bird v. Johnson* (1955) 234 Ind. 555, 559, 130 N.E.2d 29, 31. Thus, the fact that Luers was violating the preliminary injunction does not excuse the IHSAA's violation. The terms of the preliminary injunction applied to both the IHSAA and to Luers. Luers' actions do not relieve the IHSAA of its duties pursuant to its own Rules and By–Laws or pursuant to the trial court's preliminary injunction.

The purpose of the IHSAA's Transfer Rule is to "preserve the integrity of interschool athletics and to prevent or minimize recruiting, proselytizing and school 'jumping' for athletic reasons...." IHSAA Rule 19–4. The IHSAA has established a procedure by which transferring student athletes, who have been denied varsity eligibility by the IHSAA pursuant to the Transfer Rule, are allowed to compete by obtaining a preliminary injunction. The purpose of this procedure is to grant relief to students once a court determines that the students should have been given full playing eligibility despite the initial IHSAA determination of limited junior varsity eligibility. The purpose of the Restitution Rule, then, is to provide a level playing field for schools whose athletes compete against those athletes who compete by virtue of a court order and are later determined to have been ineligible. In furtherance of this purpose, the Restitution Rule provides for the forfeiture of individual or team awards or titles if an individual is later determined to be ineligible. In addition, if a school receives or is to receive any funds from an association tournament series in which an ineligible individual participates, the school is required to forfeit its share of the receipts

from the competition.[11] The theory behind the Restitution Rule is to place the schools in as nearly the same position they would have been had the ineligible athlete not participated. However, as applied to the facts in this case, the Restitution Rule kept an otherwise qualified student athlete from participating in varsity level athletics at all, producing the same effect as the IHSAA's eligibility decision under its Transfer Rule.

The trial court's contempt judgment specifically found that the IHSAA did not meet its burden of showing that the violation was not willful. The evidence supports the trial court finding and the determination of contempt.

## IV

### Monetary Assessment

As its final argument, the IHSAA contends that the monetary assessment imposed by the trial court is penal and unenforceable because the language of the order is unclear as to when the penalty will abate and because it might be forced to pay an indefinite amount to Martin until it agrees to waive the Restitution Rule. "The primary objective of a civil contempt proceeding is not to punish the defendant, but to coerce action for the benefit of the aggrieved party." *Crowley, supra,* 708 N.E.2d at 52. Thus, the remedy in a civil contempt proceeding must be coercive or remedial in nature, rather than punitive. *Id.* Once the trial court determines a party is in contempt, it may order monetary damages to compensate the other party for the injuries it incurred as a result of the contempt. *Meade v. Levett* (1996) Ind.App., 671 N.E.2d 1172, 1181. The trial court may consider the inconve-

nience and frustration suffered by the aggrieved party in assessing damages. *Id.*

We do not find the language of the trial court's order to be unclear. The order states that "the IHSAA is assessed, from the date of the filing of its Precipice [sic] for Appeal, the sum of five hundred dollars ($500.00) per day .... for the period of time that the IHSAA remains in contempt" of the preliminary injunction. Record at 302. The preliminary injunction provided Martin with full eligibility for varsity athletics during the period the IHSAA would have held her to have limited eligibility, specifically for 365 days after Martin's last participation at Bellmont. The preliminary injunction would no longer be in effect once Martin was fully eligible to participate in varsity sports. Three hundred sixty-five days after her last participation at Bellmont, Martin would have been fully eligible for varsity sports. Thus, the assessment against the IHSAA would have terminated 365 days after Martin's last participation at Bellmont, unless the IHSAA waived the Restitution Rule prior to that time.

The trial court found that Martin had suffered financial and emotional damages as a result of the IHSAA's contempt, specifically that Martin had the ability to play college basketball and that her scholarship opportunities were being hindered. At the contempt hearing, Luers basketball coach testified that Martin had the ability to play varsity basketball at Luers. However, he gave no testimony to support the trial court's finding that Martin had the "ability to play collegiate basketball and to receive athletic scholarships," that colleges had been denied the opportunity to observe her athletic ability, and that she would be unable to obtain scholarships. Record at 299.[12] No other evidence of

11. Rule 17–6 does not specify whether the forfeited funds are divided among the other schools participating in the tournament or whether the forfeited funds are either returned or retained by the IHSAA.

12. We note that this court's opinion in *Indiana High School Athletic Ass'n v. Martin, supra,* 731 N.E.2d at 12 states that "[t]here was evidence [in the preliminary injunction hearing] that Martin is an accomplished basketball player capable of receiving a scholarship, [and that] a college scout attended prac-

monetary damages was presented. The evidence does not support the trial court's finding that the $500.00 per day assessment was for financial damages. Thus, unless the assessment and the amount thereof were coercive in nature, its imposition would be erroneous. However, the trial court made no specific findings concerning the coercive nature of the $500.00 per day assessment. During the contempt hearing, Martin questioned the IHSAA concerning its financial condition. Martin requested that the IHSAA be sanctioned, financially, as a deterrent for improper future use of the Restitution Rule, and requested that the trial court determine what amount "gets their attention." Record at 382. Although such a rationale might be viewed as impermissibly punitive in nature, we hold that it clearly carried a coercive message to the IHSAA. Further, the IHSAA was allowed to purge itself of contempt by waiving its Restitution Rule such that Martin would be allowed to play. This evidence supports a conclusion that the $500.00 per day assessment imposed by the trial court served a coercive function, thus making it an appropriate sanction. The trial court judgment imposing the $500.00 per day assessment against the IHSAA was proper.

The judgment is affirmed.

BAILEY, J., concurs.

VAIDIK, J., dissents with separate opinion.

VAIDIK, Judge, dissenting

This appeal represents yet another attack on the IHSAA's unpopular restitution rule. The majority's ruling ignores the direction of our supreme court by disguising a challenge to the validity of the restitution rule as a contempt issue.

Our supreme court has previously determined that it is an abuse of discretion for a trial court to enjoin enforcement of the restitution rule. *See, Indiana High School Athletic Ass'n, Inc. v. Carlberg,* 694 N.E.2d 222 (Ind.1997); *Indiana High School Athletic Ass'n, Inc. v. Reyes,* 694 N.E.2d 249 (Ind.1997). The court found that application of the rule against a student athlete "would not be 'willful and unreasonable' ..." finding "there is an interest in restitution and fairness to schools which and athletes who compete against ineligible students." *Carlberg* at 235. Additionally, the court concluded that the restitution rule did not engender disrespect for the judiciary and does not "impinge on the judiciary's function." *Carlberg* at 235. Further, the rule "does not purport to authorize interference with any court order during the time it remains in effect, but authorizes restitutive penalties when a temporary restraining order is ultimately dissolved and the challenged eligibility remains undisturbed...." *Id.* at 236 (quoting *Cardinal Mooney High School v. Mich. High School Athletic Ass'n,* 437 Mich. 75, 467 N.W.2d 21, 24 (1991)). Thus, the supreme court put to bed the issue of whether a trial court may preliminarily enjoin the IHSAA from enforcing its restitution order. The court resoundingly answered no.

In the present case, a trial court was asked by a student athlete to preliminarily enjoin the IHSAA from enforcing its restitution rule. The trial court, recognizing its limitations under the *Carlberg* decision, ordered instead that the IHSAA was enjoined from attempting to enforce its eligibility decision either directly or indirectly. The initial order made no mention of the restitution rule. Only after the trial court found the IHSAA in contempt did the court allow the IHSAA to purge itself of contempt by waiving the restitution rule. Whether a trial court enjoins the enforcement of the restitution rule initially or allows the IHSAA to purge itself of con-

tice to watch her ..." It is quite possible, if not probable, that Judge Boyer was drawing upon that earlier evidence.

tempt by waiving the restitution rule, the result is the same—the court is ordering the IHSAA to refrain from enforcing its restitution rule. This is in contravention of the dictates of our supreme court. In other words, proceeding under a contempt action does not make this any less an attempt to enjoin the enforcement of the restitution rule.

Even if this is only just another contempt case, the IHSAA should still win. In order to be punished for contempt, there must be an order commanding the accused to do or refrain from doing something. *Clark v. Clark*, 404 N.E.2d 23, 37 (Ind.Ct.App.1980). As the majority notes, a party must willfully disobey a lawfully entered court order of which the party had notice, and a party may not be held in contempt for failing to comply with an ambiguous or indefinite order. Op. at 766 (citing *Meyer*, 707 N.E.2d at 1031 and *Rendon*, 692 N.E.2d at 896). Further, an order which fails to include "[an] express command or prohibition cannot provide the foundation for contempt proceedings." *Nicholas v. Nicholas*, 482 N.E.2d 770, 771 (Ind.Ct.App.1985).

In this case, before the contempt finding, the trial court failed to explicitly delineate the conduct that the IHSAA was refrained from doing or not doing. Particularly, the court's initial order did not order the IHSAA to waive its restitution order as to Martin or her school. As a result, before the contempt finding, the IHSAA could not have reasonably known that the court's order required it to waive its restitution order. This is even more convincing when it is clear that Martin, in her complaint, asked the court to enjoin the IHSAA from enforcement of the restitution rule yet the court, apparently in compliance with *Carlberg*, did not specifically do so. Instead the trial court generally ordered the IHSAA from directly or indirectly enforcing its eligibility decision. The court's initial order was simply not clear as to what action or inaction would violate the order, consequently, the IHSAA did not willfully disobey this order. The majority contends that the order was sufficiently clear because the IHSAA was given the opportunity to purge itself of contempt by waiving its restitution order. But, this reasoning ignores the fact that the IHSAA was found in contempt *before* the court allowed waiver of the restitution rule as a means to avoid further contempt. Put differently, at the time of the contempt finding, the order was unclear as to what was expected of the IHSAA and only became clear after the fact.

Furthermore, it is evident that the initial order was ambiguous because there is no agreement as to what conduct of the IHSAA was contemptuous. The majority concludes alternatively that the contemptuous conduct was either the IHSAA's failure to waive its restitution order or the IHSAA's failure to "energetically" ensure that Martin was allowed to participate in varsity basketball at Luers. Op. 769, 771. Under either theory, the contemptuous conduct occurred at the time of the court's initial order. Yet, the trial court ordered the penalty of $500 per day to be imposed not at the time of the court's initial order but rather at the time the IHSAA initiated its appeal of the trial court's decision.[13] This leads to the inference that the trial court determined the contemptuous conduct was the filing of the appeal.

Under the cloak of a contempt action, this appeal really represents another challenge to the restitution rule. The concerns about the restitution rule should be addressed in the political arena and not in the judicial forum. See *Ind. High Sch.*

---

**13.** I agree with the majority that a party may not be held in contempt for appealing a court's order.

*Athletic Ass'n, Inc. v. Vasario,* 726 N.E.2d 325, 333 (Ind.Ct.App.2000), trans. denied.[14]

**14.** Our legislature has addressed these concerns by establishing an administrative review panel in the IHSAA to better scrutinize eligibility decisions. See IND. CODE § 20–5–63–1 et seq.