**INDIANA HIGH SCHOOL ATHLETIC ASSOCIATION, INC., Appellant (Defendant below),**

v.

**Jessah MARTIN, Appellee (Plaintiff below).**

No. 02S03–0106–CV–312.

Supreme Court of Indiana.

April 10, 2002.

Robert M. Baker III, Johnson, Smith, Pence, & Heath LLP, Indianapolis, IN, Attorney for Appellant.

Edward L. Murphy, Jr., Stefanie R. Crawford, Miller, Carson, Boxberger & Murphy LLP, Fort Wayne, IN, Attorneys for Appellee.

## ON PETITION TO TRANSFER

SULLIVAN, Justice.

The trial judge in this case found the IHSAA in contempt of court for seeking to enforce its "restitution rule." The restitution rule permits the IHSAA to forfeit a school's victories and titles won with an ineligible student where a trial court injunction allowing the ineligible student to play is later reversed or vacated. We upheld the validity of the restitution rule in two decisions five years ago; the IHSAA was not in contempt.

*Background*

Appellant, Indiana High School Athletic Association (IHSAA), is an Indiana voluntary, not-for-profit corporation open to all private, public, parochial, boarding, and institutional high schools of the State of Indiana. Its purpose is to encourage, regulate, and give direction to wholesome amateur interschool athletic competition between its member schools. Membership in the IHSAA is contingent upon compliance with its rules. Both Bishop Luers High School, a parochial school, and Bellmont High School, a public school, are member schools.

Appellee, Jessah Martin, is an eighteen year old high school senior. Martin lived with her parents and attended Bellmont High School for her first three years in high school. As a result of "mental and emotional stress," Martin transferred to Bishop Luers High School ("Bishop Luers"), for her senior year, where she wanted to play on the varsity girls' basketball team. She also moved in with her former coach, Harry Miller, and his wife. Martin's transfer triggered IHSAA Rule 19 ("the transfer rule"), which restricts participation in interschool athletic competition by students who transfer from one school to another.[1] She was granted "limited" eligibility by the IHSAA. As such, she was allowed to compete on the junior varsity basketball team but not the varsity team for a period of 365 days from her last participation in varsity athletics.

On September 9, 1999, Martin appealed the IHSAA's decision that she was ineligible to compete on the Bishop Luers varsity basketball team to the IHSAA Executive Board. She argued that she qualified to play varsity basketball under IHSAA Rule 17–8 ("the hardship rule"). After a review

---

1. We discussed the transfer rule at length in *Indiana High School Athletic Ass'n, Inc. v.* *Carlberg,* 694 N.E.2d 222, 232–234, 236–242 (Ind.1997).

of the merits, IHSAA determined that Martin failed to demonstrate entitlement to participate under the hardship rule.

On November 4, 1999, Martin filed a Verified Complaint for Injunctive Relief in the Allen Superior Court. On November 29, 1999, the trial court found that Martin was eligible to play varsity athletics under the rules of the IHSAA and granted Martin a preliminary injunction. In relevant part, the injunction:

> "[T]emporarily ENJOINED AND RE-STRAINED [IHSAA] from attempting to enforce, implement or carry out in any manner, directly or indirectly, the decision of the.... [IHSAA] to the effect that plaintiff, Jessah Martin, is ineligible to participate in varsity interscholastic athletics at and on behalf of Bishop Luers High School for a period commencing with her enrollment at Bishop Luers High School." (R. at 263.)

Bishop Luers decided not to allow Martin to play on the varsity basketball team. Fearing the ramifications of IHSAA Rules 3-9 and 17-6 ("restitution rule"),[2] the school was of the view that to allow Martin to play exposed it to the risk that if the injunction were reversed or vacated on appeal, it would have to forfeit games and awards won with Martin's participation.

On December 9, 1999, the IHSAA appealed the court's order. Viewing this filing as prohibited by the court's injunction because the appeal constituted the "first step to enforce the [r]estitution [r]ule," Martin filed a Verified Petition for Contempt of Court. On January 21, 2000, the trial court issued its Order or Judgment of the Court (Contempt Judgment) in which it found that the IHSAA had "willfully and contemptuously disregarded [the trial court's] [o]rder by forcing [Bishop Luers] to comply with the IHSAA's original decision that Jessah Martin is ineligible to participate in varsity interscholastic athletics." (R. at 301.) The trial court assessed IHSAA $500.00 per day, from the date of the filing of its Precipice for Appeal. The fine was to be paid directly to Jessah Martin, for the period of time that IHSAA remains in contempt of the initial order.

The Court of Appeals upheld the trial court's actions as an appropriate sanction. See *Indiana High School Athletic Ass'n, Inc. v. Martin*, 741 N.E.2d 757, 772–773 (Ind.Ct.App.2000), *transf. granted*, 753 N.E.2d 18 (Ind.2001)(table). Judge Vaidik dissented from the decision of the Court of Appeals. Relying heavily on *Indiana High School Athletic Ass'n, Inc. v. Carlberg*, 694 N.E.2d 222 (Ind.1997), and *Indiana High School Athletic Ass'n, Inc. v. Reyes*, 694 N.E.2d 249 (Ind.1997), Judge Vaidik correctly argued that the trial court abused its discretion in finding IHSAA in contempt and that the $500.00 per day assessment was impermissibly punitive. See *Martin*, 741 N.E.2d at 773–775. We granted transfer and now adopt Judge Vaidik's dissent.

### Discussion

### I

In its appeal, the IHSAA asserts several challenges to the trial court's judgment, including that (1) the preliminary injunction did not order it to waive the restitution rule, (2) it did not willfully violate the preliminary injunction, and (3) the trial court's finding of contempt violated the

---

**2.** The restitution rule applies when an ineligible student participates in interscholastic athletics in accordance with a court order that is later reversed or vacated. It allows IHSAA to take steps to restore the integrity of athletic contests, including, but not limited to, forfeiture of games.

*Reyes* and *Carlberg* decisions.[3]

■ In order to be held in contempt for failure to follow the court's order, IHSAA must have willfully disobeyed the court order. *See Meyer v. Wolvos,* 707 N.E.2d 1029, 1031 (Ind.App.1999), *transf. denied.* The order must have been so clear and certain that there could be no question as to what IHSAA must do, or not do, and so there could be no question regarding when the order is violated. *Martinal v. Lake O' The Woods Club, Inc.,* 248 Ind. 252, 254, 225 N.E.2d 183, 185 (1967); *Consolidated Rail Corp. v. Estate of Martin,* 720 N.E.2d 1261, 1265 (Ind.Ct. App.1999); *Meyer,* 707 N.E.2d at 1031.

■ In this case, the trial court's preliminary injunction enjoined and restrained IHSAA "from attempting to enforce, implement or carry out in any manner, directly or indirectly, .... [its] decision .... and ruling .... to the effect that.... Martin is ineligible to participate in varsity interscholastic athletics at and on behalf of Bishop Luers High School for a period of one year commencing with her enrollment at Bishop Luers High School." (R. at 262–263.)

The trial court's initial order made no mention of the restitution rule. As observed by Judge Vaidik:

"[B]efore the contempt finding, the IHSAA could not have reasonably known that the court's order required it to waive its restitution order. This is even more convincing when it is clear that Martin, in her complaint, asked the court to enjoin the IHSAA from enforcement of the restitution rule yet the court, apparently in compliance with *Carlberg* did not specifically do so."
*Martin,* 741 N.E.2d at 757.

Even if IHSAA's filing its appeal of the court's order constituted an effort to enforce the restitution rule, which we do not believe it did, the trial court's preliminary injunction was simply not clear that enforcement of the restitution rule would violate the order. Furthermore, past experience provided no guide. This case is apparently the first time that the restitution rule has ever been cited by a high school as a reason for not allowing a student to participate in varsity athletics. *See Martin,* 741 N.E.2d at 765 (stating that this "appears to be a unique if not novel situation"). Additionally, Martin made no effort to notify IHSAA that she thought the restitution rule was keeping her from playing, failing to avail herself of IHSAA's administrative procedures for waiver of the restitution rule.

Even had the trial court's preliminary order been more specific, there are insufficient grounds to support the trial court's finding that IHSAA "willfully and contemptuously disregarded its [o]rder by forcing Bishop Luers High School to comply with the IHSAA's original decision that Jessah Martin is ineligible to participate." (R. at 301.) Martin attempts to support this finding on the basis that the IHSAA, through its restitution rule, has created a situation in which "any student wrongly denied full eligibility by the IHSAA will likely no longer receive any relief .... essentially ma[king] the preliminary injunction function of the Indiana Courts null and void." (*Br. of Appellee In Resp. to the Br. of Appellant* at 20.)

Martin's argument contradicts the controlling precedent stated by our decisions

---

3. IHSAA also contests the trial court's jurisdiction arguing that Martin failed to exhaust her administrative remedies. The Court of Appeals decided this issue adverse to IHSAA. We summarily affirm the Court of Appeals on this issue.

in *Indiana High School Athletic Ass'n, Inc. v. Carlberg* and *Indiana High School Athletic Ass'n, Inc. v. Reyes.* The IHSAA has an interest in restitution and fairness to schools which and athletes who compete against ineligible students. *See Carlberg,* 694 N.E.2d 222, 235 (Ind.1997). As such, this court has held the restitution rule to be a valid rule, enforcement of which does not impinge upon the judiciary's function. *See Carlberg,* 694 N.E.2d 222, 236 (the restitution rule "does not purport to authorize interference with any court order during the time it remains in effect, but authorizes restitutive penalties when a temporary order is ultimately dissolved and the challenged eligibility remains undisturbed in force.") (citation omitted).

In the present case, the trial court in apparent deference to the *Carlberg* decision did not direct IHSAA to waive the restitution rule but, after finding IHSAA in contempt, it allowed IHSAA to purge itself of contempt by waiving the rule. Judge Vaidik was correct in her analysis of this situation. "Whether a trial court enjoins the enforcement of the restitution rule initially or allows the IHSAA to purge itself of contempt by waiving the restitution rule, the result is the same—the court is ordering the IHSAA to refrain from enforcing its restitution rule." *See Martin,* 741 N.E.2d 757, 773–774. An attempt to enjoin enforcement of the restitution rule under a contempt action is no more permissible than a direct attack on the rule. Both were prohibited by the *Reyes* and *Carlberg* decisions. *See Carlberg,* 694 N.E.2d at 235; *Reyes,* 694 N.E.2d 249, 258 (Ind.1997).

Because we reverse the trial court's finding of contempt, we vacate the fine imposed upon the IHSAA as well.

## Conclusion

Having granted transfer pursuant to Indiana Appellate Procedure Rule 58(A), thereby vacating the opinion of the Court of Appeals, we now summarily affirm the opinion of the Court of Appeals as to the issue discussed in footnote 3, and reverse and vacate the trial court's order of contempt against IHSAA and imposition of a $500 per day assessment.

SHEPARD, C.J., concurs.

BOEHM, J., concurs with separate opinion.

DICKSON, J., dissents with separate opinion with which RUCKER, J., concurs.

BOEHM, Justice, concurring.

I agree with the majority that the injunction issued by the trial court did not put the IHSAA on notice that simply taking an appeal without unilaterally abandoning its "restitution rule" would violate the order. For that reason I agree the contempt order must be vacated.

Even if I did not concur on the foregoing ground, I would reverse the contempt finding for a more fundamental reason. I cannot imagine circumstances where it is appropriate for a trial court to hold a party in contempt for pursuing a nonfrivolous appeal. The right of appeal in civil matters is guaranteed by Article VII, Section 6 of our Constitution. *WorldCom Network Servs., Inc. v. Thompson,* 698 N.E.2d 1233, 1242 (Ind.Ct.App.1998); 24 George T. Patton, Jr., *Indiana Practice* § 4.11, at 69 (3d ed.2001). The trial court expressed understandable frustration with the reality that the effect of its injunction could be mooted by expiration of the basketball season before the conclusion of the IHSAA's appeal, which ultimately proved unsuccessful. *Ind. High Sch. Athletic Ass'n v. Martin,* 731 N.E.2d 1 (Ind.Ct.App.2000), *trans. denied.* However, the remedy for this is for the affected party to seek an expedited appeal, not for the trial court to arrogate

to itself the role of final arbiter of this dispute by seeking to preclude appellate review of its own decision. *Cf. In re M.B.*, 137 Ill.App.3d 992, 92 Ill.Dec. 299, 484 N.E.2d 1154, 1157 (1985) ("[W]here fundamental constitutional rights are involved, we believe that the right to appeal without being held in contempt must be deemed to exist.").

The injunction enjoined the principal of Bishop Luers and those under her direction from enforcing the IHSAA decision that Martin was ineligible in the 2000 season. Despite the school's ability to cure the situation by allowing Martin to compete, the school chose not to permit her to join the team. No contempt citation was sought against the school, however. Under these circumstances, the school, not the IHSAA, refused to honor the injunction pending appeal. We are told the school did this based on its concern for the effect of the restitution rule. That would be a concern only if the injunction did not hold up on appeal. The school's remedy is the same as that available to Martin: seeking an emergency appeal. The odds of success in that endeavor may be small, but to the extent the courts are embroiled in these local spats over athletic eligibility, the litigants bear the disadvantages that resort to litigation entails for every other citizen who seeks to draw on public judicial resources to resolve a dispute.

These cases are competing for attention with litigants who claim the state's taxing structure is fatally flawed, that our disabled students are not afforded appropriate educational opportunities, and that our prison system is hopelessly overtaxed. Thousands of other cases—dissolutions, injuries, lost employment, and failed businesses—are, for the parties involved, among the most important matters in their lives. In an egregious case, the Court of Appeals may grant emergency relief. If that doesn't occur, the school, like all of these other citizens, can take its chances on an adverse outcome at the appellate level. If the school is correct and the athlete is found eligible at the end of the day, nothing happens, and the results of the school's games will stand. If not, the school, like any other litigant, bears the risk of having pursued litigation while making an incorrect evaluation of its pending claim.

Martin, having won at the trial court level, put the school in the position of being the party who needed to move forward. Had she lost, the need to seek expedited relief would have fallen on her. But in neither case can the parties or the trial court preclude a nonfrivolous appeal by contempt or otherwise.

SHEPARD, C.J., concurs.

DICKSON, Justice, dissenting.

I dissent, believing that the majority opinion of the Court of Appeals correctly decided this case. In addition, I continue to believe that we incorrectly decided *Ind. High Sch. Athletic Ass'n, Inc. v. Carlberg*, 694 N.E.2d 222 (Ind.1997), and *Ind. High Sch. Athletic Ass'n, Inc. v. Reyes*, 694 N.E.2d 249 (Ind.1997), upon which today's majority opinion rests.

It should be noted that today's decision does not address whether the IHSAA's "hardship rule" or its "restitution rule" may be invalid or unlawfully applied in light of the United States Supreme Court's recent decision in *Brentwood Acad. v. Tenn. Secondary Sch. Athletic Ass'n*, 531 U.S. 288, 121 S.Ct. 924, 148 L.Ed.2d 807 (2001), which was decided after the decision of the Court of Appeals.

RUCKER, J., concurs.