# MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Nov 28 2017, 10:01 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Danielle L. Gregory
Indianapolis, Indiana

ATTORNEY FOR APPELLEE

Stacy L. Kelley
Glaser & Ebbs
Indianapolis, Indiana

IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Dameka Dunlop, <br> *Appellant-Petitioner,* <br><br> v. <br><br> Courtney Johnson, Sr., <br> *Appellee-Respondent* | November 28, 2017 <br><br> Court of Appeals Case No. <br> 49A02-1705-JP-1015 <br><br> Appeal from the Marion Circuit Court <br><br> The Honorable Sheryl Lynch, Judge <br> The Honorable Marie Kern, Magistrate <br><br> Trial Court Cause No. <br> 49C01-1510-JP-35602 |

**Barnes**, **Judge**.

# Case Summary

Dameka Dunlop ("Mother") appeals the trial court's order granting sole legal custody and physical custody of Courtney Johnson, Jr. ("Child") to Courtney Johnson, Sr. ("Father"), denying Mother's motion to relocate with Child, and awarding attorney fees to Father. We affirm in part, reverse in part, and remand.

# Issues

The issues before us are as follows:

I.      whether the trial court erred in awarding physical custody to Father;

II.      whether the trial court erred in awarding sole legal custody to Father;

III.     whether the trial court erred in denying Mother's request to relocate with the parties' minor child;

IV.     whether the trial court abused its discretion in finding Mother in contempt; and

V.      whether the trial court erred in awarding attorney fees to Father.

# Facts

Mother and Father are the parents of Child, who was born in 2011. In August of 2015, Mother moved from the home she shared with Father, her prior-born

son, Father's prior-born son, and Father's mother. Mother filed a verified petition to establish support pursuant to execution of a paternity affidavit on October 27, 2015. Child's paternity was established on February 24, 2016. Mother was awarded primary physical custody of Child.

[3] On May 6, 2016, Mother filed a notice of intent to relocate. On May 31, 2016, the trial court ordered ("Order") that Mother could not relocate with Child until the court had conducted a hearing on Father's motion in opposition. Mother relocated to Atlanta, Georgia, in early October of 2016. Mother denied receiving notice of the Order.

[4] A hearing scheduled for September 2016 was continued due to the trial judge's illness. The rescheduled hearing took place on December 7, 2016. On that date, Mother failed to appear. Father, having taken leave from work, appeared with his counsel. On December 7, 2016, Father filed a petition for contempt against Mother.

[5] On March 21, 2017, the trial court conducted a hearing regarding the relocation dispute and Father's contempt action. Mother and Father appeared and presented evidence. Father requested primary physical custody of Child and asked the trial court to order joint legal custody with Mother having parenting time pursuant to the Indiana Parenting Time Guidelines applicable when distance is a factor. Father also requested his attorney fees and lost wages for the December 7, 2016 hearing and attorney fees for the contempt action.

Child has a healthy, loving relationship with Father and his sibling in Father's home. Father has supplied clothing and money for Child's shoes, and has paid some child support.[1] From August 2015, when Mother moved out, until August 2016, Father picked up his prior-born son, Mother's prior-born son, and Child from school on Thursdays and some Fridays, and Child would spend the night. Father typically exercised six to eight overnight visits with Child each month.

Father agrees that Mother is a committed and nurturing parent to Child. He and Mother typically communicated "through phone calls or texts" regarding his parenting time, and Mother was generally flexible regarding his parenting time; however, after he and Mother argued in December 2016, Mother stopped responding to his calls and text messages. Tr. p. 129. Afterwards, he briefly stopped trying to contact Mother but resumed calling and sent five unanswered texts to her from January to February 2017. The December 2016 argument was not the first time that Mother ignored his telephone calls. *Id.* at 149 ("[T]here have been times where she may be [sic] wouldn't answer the phone for two to three weeks or a month since she left in 2015 . . . .").

Father is a lifelong resident of Marion County and "pretty much all of [his] family is here." *Id.* at 122. Child has a "good relationship" with Father's prior-

---

[1] The trial court credited Father with $900 in financial and in-kind contributions toward support of Child and offset the sum against Father's child support obligation, leaving an arrearage of $9,784 owed by Father. App. p. 30.

born son and has friends in Father's neighborhood. At the hearing on the parties' relocation and contempt disputes, Father testified that he had not seen Child in three months.

[9] Father learned of Mother's relocation to Atlanta on social media, and Mother's relocation interfered with his parenting time "a whole lot." *Id*. at 133. After Mother relocated, she returned to Indianapolis on alternating weekends, and he was only able to exercise a maximum of twenty-four hours of parenting time, as opposed to the full weekends that he had previously enjoyed.

[10] Father requested primary physical custody and joint legal custody of Child. He also asked that Mother be awarded parenting time pursuant to the Indiana Parenting Time Guidelines when distance is a factor.

[11] Father moved the trial court to enter a finding of contempt against Mother for relocating Child in violation of the court order and without his permission. He also requested attorney fees relating to the contempt filing, and lost wages and attorney fees for the December 7, 2016 hearing, for which Mother failed to appear.

[12] Mother's testimony was as follows: Child has a healthy, loving relationship with Mother and her prior-born son. Mother testified that after August 2015, Father paid $900 or less in child-support or in-kind benefits for Child's needs. She testified that she obtained Child Care Development Fund assistance to pay for work-related child care, and thereafter paid child care expenses herself.

[13]     Mother had a longtime desire to relocate eight hours away from Indianapolis to Atlanta, where paternal grandfather and Mother's relatives reside, and where Mother believed there existed more favorable career opportunities and a better environment for Child. In April 2016, Mother prepared to relocate to Atlanta, where she planned to work for a high-profile hairstylist. Mother testified that she advised Father of her plans, and that he did not object until she filed her notice of intent to relocate. She began working in Atlanta in August 2016, signed an apartment lease in September 2016, paid for daycare registration in Atlanta in mid-September 2016, and got keys to her new apartment in October 2016. Child began attending school in Atlanta in mid-October 2016.

[14]     Mother testified that after she moved to Atlanta, she continued her longstanding practice of coordinating and facilitating Father's parenting time with Child. Mother returned to Indianapolis on alternating weekends to work as a hairstylist from mid-October 2016 through approximately December 2016. She testified that, around Christmas 2016, she and Father argued, and that she subsequently stopped initiating communication with Father to prompt his scheduling parenting time with Child. After December 2016, Mother testified that Father telephoned Child only once and failed to inquire about Child's health, schooling, or welfare. Mother returned to Indianapolis on three separate occasions in January, February and March 2017, respectively. She did not notify Father that she was in town, and Father was not able to visit with Child.

[15] Mother asked the trial court for continued primary physical custody of Child because she is a fit parent and has always been Child's primary caregiver. She testified that she intended to remain in Atlanta and to return to Indianapolis in alternating weeks to work as a hairstylist.

[16] On April 28, 2017, the trial court entered an order (1) determining that even if Mother's relocation was made in good faith and for a legitimate reason, the move was not in Child's best interests; (2) granting primary physical custody to Father; (3) granting sole legal custody to Father, because distance so warranted and because the parties could not communicate effectively and cooperatively; (4) ordering Mother to pay Father's attorney fees of $675 as a sanction for violating the Order, and to pay Father's attorney fees of $750 and to reimburse $83.92 in his lost wages as a sanction for failing to appear for the December 7, 2016 hearing. The order of the trial court found, in part, as follows:

> 118. The Court finds that it is in the child's best interests to order that Father shall have primary physical custody of the minor child. Father has demonstrated more significant stability than Mother since the parties separated in August 2015. Further, the Court believes that Mother has demonstrated poor judgment associated with her relocation decision, acting in her best interests, not those of the child. Finally, the Court does not find Mother's assertions that she was unaware of the Court's order prohibiting relocation to be persuasive or credible. All of Mother's actions suggest a complete disregard for any order of the Court as Mother took deliberate and calculated steps to advance her relocation, prior to any order from the Court permitting that action to be taken on behalf of the child. The Court believes that Father is the more likely of the two parents to abide by any orders of this Court as a result.

119. The Court also orders Father to have sole legal custody of the minor child, as the evidence has demonstrated that Mother and Father have an inability to effectively communicate in a cooperative manner and due to the significant distance involved.

120. Father is ordered to be able to assume custody of the minor child effective May 13, 2017, in order to give him an opportunity to make any necessary travel arrangements, as well as provisions for child care and schooling.

121. Mother shall have parenting time per the IPTGS When Distance is a Factor. All ancillary provisions of the IPTGS shall apply. In addition, if Mother is going to be in the Indianapolis area, she may elect to exercise additional parenting time in Indianapolis, but must give Father a minimum of seven days' notice of her intent to exercise that parenting time. Those additional periods of parenting time shall not exceed 48 hours in duration, absent an agreement between Mother and Father.

122. Transportation for Mother's parenting time shall be equally divided, absent an alternate agreement of the parties.

* * * * *

146. I.C. 31-14-18-2 permits the court to order a party to pay a reasonable amount for attorney's fees, including amounts for legal services provided and costs incurred. . . .

* * * * *

148. The Court finds that Mother is in contempt for failure to comply with the Court's order not to relocate the child until the matter had been heard to completion. Mother testified that she assumed that she'd be allowed to relocate the child and all of

Mother's actions demonstrate that she went forward with her plan to relocate the child, despite the Court order prohibiting his relocation.

149. As sanction for Mother's contempt, the Court orders Mother to pay $675 of Father's attorney fees to attorney Stacey Kelley within 180 days of the date of this order. Any fees owing thereon at the conclusion of that period of time may be reduced to a judgment in favor of attorney Kelley upon written request.

150. The Court further finds that Mother's misconduct associated with her failure to appear for trial on December 7, 2016, resulted in additional unnecessary legal fees for Father, as well as missed wages associated with four hours of Father's employment. As sanction for this misconduct, the Court orders Mother to pay attorney Stacy Kelley $750 in attorney fees within 180 days of the date of this order. Any balance owed thereon at the conclusion of that period of time may be reduced to a written judgment in favor of attorney Kelley upon written request. Additionally, Mother shall reimburse Father $83.92 in lost wages within 30 days of the date of this order and provide proof of payment to the Court.

App. Vol. II pp. 27, 32-33. Mother now appeals.

# Analysis

## I. *Physical Custody*

[17] Mother argues that the trial court abused its discretion in awarding physical custody of Child to Father. Child custody determinations fall squarely within the discretion of the trial court and will not be disturbed except for an abuse of discretion. *Walker v. Walker,* 539 N.E.2d 509, 510 (Ind. Ct. App. 1989). On review, we will not reweigh the evidence, adjudge the credibility of the

witnesses, nor substitute our judgment for that of the trial court. *Id.* We will examine the evidence to determine if there is any evidence supporting the trial court's determination. *Id.* We will not reverse unless we find the trial court's decision is against the logic and effect of the facts and circumstances or the reasonable inferences drawn therefrom. *Id.* "Appellate deference to the determinations of our trial court judges, especially in domestic relations matters, is warranted because of their unique, direct interactions with the parties face-to-face, often over an extended period of time." *Best v. Best,* 941 N.E.2d 499, 502 (Ind. 2011). "Thus enabled to assess credibility and character through both factual testimony and intuitive discernment, our trial judges are in a superior position to ascertain information and apply common sense, particularly in the determination of the best interests of the involved children." *Id.*

[18] The modification of a custody order also lies within the sound discretion of the trial court. *Spencer v. Spencer,* 684 N.E.2d 500, 501 (Ind. Ct. App. 1997). Upon appeal, we will reverse a trial court's decision only upon a showing of an abuse of discretion. *Id.* In general, a court must find that modification would be in the child's best interests and that there has been a substantial change in circumstances. Ind. Code § 31-17-2-21; *Haley v. Haley,* 771 N.E.2d 743, 747 (Ind. Ct. App. 2002). However, where, as here, a motion for custody modification is filed in response to a relocation, the trial court must instead take the following factors into account in deciding whether to modify custody:

> (1) The distance involved in the proposed change of residence.

(2) The hardship and expense involved for the nonrelocating individual to exercise parenting time . . . .

(3) The feasibility of preserving the relationship between the nonrelocating individual and the child through suitable parenting time . . . arrangements, including consideration of the financial circumstances of the parties.

(4) Whether there is an established pattern of conduct by the relocating individual, including actions by the individual to either promote or thwart a nonrelocating individual's contact with the child.

(5) The reasons provided by the:

    (A) relocating individual for seeking relocation; and

    (B) nonrelocating parent for opposing the relocation of the child.

(6) Other factors affecting the best interest of the child.

I.C. § 31-17-2.2-1(b).  *See Baxendale v. Raich,* 878 N.E.2d 1252, 1256-57 (Ind. 2008).  The "[o]ther factors" to be considered are enumerated in Indiana Code Section 31-17-2-8 for ascertaining a child's best interests:

(1) The age and sex of the child.

(2) The wishes of the child's parent or parents.

(3) The wishes of the child, with more consideration given to the child's wishes if the child is at least fourteen (14) years of age.

(4) The interaction and interrelationship of the child with:

    (A) the child's parent or parents;

    (B) the child's sibling; and

    (C) any other person who may significantly affect the child's best interests.

(5) The child's adjustment to the child's:

    (A) home;

    (B) school; and

    (C) community.

(6) The mental and physical health of all individuals involved.

(7) Evidence of a pattern of domestic or family violence by either parent.

(8) Evidence that the child has been cared for by a de facto custodian, and if the evidence is sufficient, the court shall consider the factors described in section 8.5(b) [IC 31-17-2-8.5(b)] of this chapter."

[19] In considering the statutory factors relevant to a decision to modify custody under Indiana Code Section 31-17-2.2-1(b), we note the following: Mother's relocation put Child eight hours away from Indianapolis. Because of the distance, Father's visits, formerly six to eight overnight visits each month, were

drastically limited to approximately twenty-four hours of parenting time on alternating weekends when Mother returned to Indianapolis. Challenges presented by the geographic distance and Mother's intermittent return trips to Indianapolis thus made it less feasible that Father's close bond with Child, as well as other familial bonds, could be adequately preserved through parenting time after Mother's relocation.

[20] Mother's reasons for relocating to Atlanta were aspirational – more lucrative work and an allegedly more positive social and academic environment for Child, including free, state-funded pre-kindergarten in Georgia. The record reflects that at the time of the hearing, however, Mother's financial goals had not materialized, and she had suffered a significant reduction in her income and standard of living. As the trial court noted, "Mother has effectively reduced her income and set herself back several years in terms of career advancement by relocating to Atlanta." App. Vol. II p. 23.

[21] Additionally, the record reveals an established pattern of conduct by Mother to thwart Father's exercise of parenting time. After an argument in December of 2016, Mother stopped acknowledging Father's telephone calls and texts and deliberately ceased initiating communications regarding parenting time. Mother testified that she tired of orchestrating Father's parenting time, when he was not helping her financially. The record is clear that Mother was struggling financially and that Father was behind on child support. It also appears that unless Mother prompted him, Father did not consistently initiate parenting time with Child.

[22] We sympathize with Mother; however, we agree with the trial court that it was incumbent upon her—as the party who relocated and who dictated the timetable for her intermittent return trips to Indianapolis—to maintain open lines of communication with Father. *See* Tr. p. 103 ("[Trial Judge]: And so I know you said that you got tired of always being the one to initiate contact with dad, but how was he to know what weekends you were going to be up here if you did not tell him?"). Although Mother returned to Indianapolis in January, February, and March 2017, she failed to notify Father; consequently, on each occasion, Father was unable to exercise parenting time with Child. At the time of the hearing on the relocation and contempt disputes, Father had not seen Child in three months.

[23] Regarding the best interests of Child, we observe that Child was five years old at the time of Mother's relocation. Child was closely bonded with each parent and with his sibling in each parent's household. Each parent sought physical and legal custody, having established a satisfactory physical and emotional home environment. Each parent testified that the other was a loving and nurturing parent to Child. Child was accustomed to Mother being his primary caregiver and custodial parent. Mother testified that she took Child to routine medical appointments and to school, paid his school fees, bought the bulk of his food and clothing, and paid for his haircuts.

[24]  Child was also accustomed to spending multiple overnight visits with Father each month. Father's mother resides with him and his sister lives nearby, and each is willing and able to assist with supervising Child or getting Child on and

off the school bus each day. At the time of the hearing, Mother testified that she lacked consistent family support and child care.

[25] Given Mother's relocation to Atlanta, the trial court determined that modification of custody was in Child's best interests and that there has been a substantial change in circumstances. Based upon the foregoing evidence, the trial court did not abuse its discretion in modifying custody in Father's favor upon a finding that placement with Father would promote stability and permanence for Child.

## II. Sole Legal Custody

[26] Mother argues that the trial court abused its discretion in awarding sole legal custody of Child to Father. When considering a modification from joint legal custody to sole legal custody, we must determine whether there has been a substantial change in one or more of the factors listed in Indiana Code Section 31-17-2-15, in addition to considering any substantial change to the Indiana Code Section 31-17-2-8 factors, as is typically necessary for physical custody modifications. *Julie C. v. Andrew C.,* 924 N.E.2d 1249, 1259 (Ind. Ct. App. 2010) (citing *Carmichael v. Siegel,* 754 N.E.2d 619, 635 n.7 (Ind. Ct. App. 2001)). The court shall also consider:

> (1) the fitness and suitability of each of the persons awarded joint custody;

> (2) whether the persons awarded joint custody are willing and able to communicate and cooperate in advancing the child's welfare;

(3) the wishes of the child, with more consideration given to the child's wishes if the child is at least fourteen (14) years of age;

(4) whether the child has established a close and beneficial relationship with both of the persons awarded joint custody;

(5) whether the persons awarded joint custody:

(A) live in close proximity to each other; and

(B) plan to continue to do so; and

(6) the nature of the physical and emotional environment in the home of each of the persons awarded joint custody.

I.C. § 31-17-2-15.

[27] Our courts have reiterated that factor (2), whether the parents are willing and able to cooperate in advancing the child's welfare, is of particular importance in making legal custody determinations. *Julie C.,* 924 N.E.2d at 1260; *see also Carmichael,* 754 N.E.2d at 635 ("One of the key factors to consider when determining whether joint legal custody is appropriate is whether the persons awarded joint custody are willing and able to communicate and cooperate in advancing the child's welfare."). Where "the parties have made child-rearing a battleground, then joint custody is not appropriate." *Periquet-Febres v. Febres,* 659 N.E.2d 602, 605 (Ind. Ct. App. 1995). "Indeed, to award joint legal custody to individually capable parents who cannot work together is tantamount to the proverbial folly of cutting the baby in half in order to effect a

fair distribution of the child to competing parents." *Swadner v. Swadner,* 897 N.E.2d 966, 974 (Ind. Ct. App. 2008) (quotation omitted).

[28] As we have discussed, although Child has good relationships with both parents, the trial court heard evidence that the parties lack the ability to co-parent effectively. After a dispute with Father, Mother changed the parties' parenting time practices, ignored Father's telephone calls and text messages, failed to notify him when she returned to Indianapolis from Atlanta, and thereby thwarted his efforts to exercise parenting time. *See* App. Vol. II p. 27 ("The Court also orders Father to have sole legal custody of the minor child, as the evidence has demonstrated that Mother and Father have an inability to effectively communicate in a cooperative manner and due to the significant distance involved."). Based on the foregoing, the trial court did not abuse its discretion in awarding sole legal custody to Father upon a finding that joint legal custody was not appropriate for the parties.

### III. Denial of Motion to Relocate

[29] Mother argues that the trial court abused its discretion in denying her motion to relocate with Child. Under Indiana's relocation statute, there are two ways for a non-custodial parent to object after receiving notice that the custodial parent intends to relocate: by filing a motion to prevent the relocation or by filing a motion to modify custody. *T.L. v. J.L.,* 950 N.E.2d 779, 784 (Ind. Ct. App. 2011. *See* I.C § 31-17-2.2-1, I.C. § 31-17-2.2-5.

[30] Following a motion to prevent relocation, the relocating parent must prove "that the proposed relocation is made in good faith and for a legitimate reason." I.C. § 31-17-2.2-5(c). If the court finds a good faith, legitimate purpose for the relocation, the burden then shifts to the non-relocating parent to demonstrate "that the proposed relocation is not in the best interest of the child." I.C. § 31-17-2.2-5(d). If the non-relocating party fails to object, the custodial parent is permitted to relocate with the Child. I.C. § 31-17-2.2-5(e).

[31] Because there is no explicit criteria for determining whether a relocation is in good faith and for a legitimate reason, our court has generally required that the moving parent demonstrate an objective basis—that is, "more than a mere pretext"—for relocating. *T.L.,* 950 N.E.2d at 787. It is commonly understood in today's society that many individuals move in order to live closer to family members, for financial reasons, for employment opportunities, and various other reasons. *Id.* at 788. As such, "[w]e infer that these and similar reasons . . . are what the legislature intended in requiring that relocation be for 'legitimate' and 'good faith' reasons." *Id.*

[32] Here, the trial court rightly "g[a]ve Mother the benefit of the doubt" regarding the first prong of the relocation analysis—namely, whether the relocation was made in good faith and for a legitimate reason. *See* App. Vol. II p. 24. Mother testified that she was struggling financially in Indianapolis and believed that she could fare better as a hairstylist in Atlanta, especially as an assistant to a high-profile Atlanta hairstylist. Her struggle to pay for Child's schooling expenses in Indianapolis was eased in Atlanta because Georgia offers free pre-kindergarten.

Mother testified that she relocated fully anticipating a challenging transitional period during which she might have to reduce her rates to establish a new client base. That her move did not prove instantly lucrative does not render her relocation made in bad faith and for an illegitimate reason.

[33] As to the second prong—whether Father established that relocation was not in Child's best interests—we revisit the aforementioned factors enumerated in Indiana Code Section 31-17-2.2-1 as well as the "other factors affecting the best interest of the child including the statutory factors listed in Indiana Code Section 31-17-2-8. For reasons we have already discussed relating to the eight-hour distance between Indianapolis and Atlanta; the difficulties inherent in Father exercising parenting time when Mother returns to Indianapolis intermittently; the difficulty of preserving Father's bond with Child under the circumstances; Mother and Father's questionable record of working cooperatively regarding parenting time; the relative instability of Mother's semi-nomadic lifestyle; Child's youthful age; and Child's existing bonds with siblings and family in Indianapolis, we find that the trial court did not abuse its discretion in denying Mother's motion to relocate with Child.

## IV.  Contempt

[34] Mother argues that the trial court abused its discretion in finding her in contempt. In order to be held in contempt for failing to follow a court's order, a party must have willfully disobeyed the order. *City of Gary v. Major,* 822 N.E.2d 165, 170 (Ind. 2005). "The order must have been so clear and certain that there could be no question as to what the party must do, or not do, and so there could

be no question regarding whether the order is violated." *Ind. High Sch. Athletic Ass'n v. Martin,* 765 N.E.2d 1238, 1241 (Ind. 2002). "A party may not be held in contempt for failing to comply with an ambiguous or indefinite order." *Id.* "Otherwise, a party could be held in contempt for obeying an ambiguous order in good faith." *Id.* (citing *Bowyer v. Ind. Dep't of Natural Res.,* 798 N.E.2d 912, 918 (Ind. Ct. App. 2003)). The determination of whether a party is in contempt of court is a matter left to the trial court's discretion. *Id.* at 171. We will reverse a trial court's finding of contempt only where there is no evidence or inferences therefrom to support it. *Id.* As with other sufficiency matters, we will neither reweigh evidence nor judge witness credibility. *Mitchell v. Mitchell,* 871 N.E.2d 390, 394 (Ind. Ct. App. 2007).

[35] Here, on May 31, 2016, the trial court unambiguously ordered Mother not to relocate with Child until the parties' dispute had been adjudicated. The trial court did not believe that Mother was unaware of its Order. The record reveals that trial court staff mailed the Order to each party on June 1, 2016; Father received the Order; and the trial court has no record of Mother's notice being returned. Moreover, it is evident from her own testimony that Mother began to lay the groundwork for her move to Atlanta as early as April 2016, assuming that she would be permitted to move with Child. Mother relocated with Child in early October 2016, and the hearing on Father's opposition to Mother's motion to relocate was not held until March 21, 2017. Sufficient evidence exists to support the trial court's finding of contempt under the circumstances. *See B.L. v. J.S.,* 59 N.E.3d 253, 265 (Ind. Ct. App. 2016) ("It is beyond dispute that

the trial court had issued the order before the events in question and that the . . . order was intended to prevent the type of conduct that resulted in the trial court's contempt finding.").

## V.    *Attorney Fees*

[36]    Mother argues that the trial court erred in ordering her to pay Father's attorney fees as sanctions for her contempt and misconduct in failing to appear.  "A determination regarding attorney fees in proceedings to modify a child support award is within the sound discretion of the trial court and will be reversed only upon a showing of a clear abuse of that discretion." *Martinez v. Deeter,* 968 N.E.2d 799, 810 (Ind. Ct. App. 2012).

> In determining whether to award attorney fees, the trial court must consider the parties' resources, their economic condition, their ability to engage in gainful employment, and other factors that bear on the award's reasonableness. The trial court may also consider any misconduct on the part of either of the parties that creates additional legal expenses not otherwise anticipated.

*Id.* (citations omitted).

[37]    The factor with the most bearing upon the appropriateness of an award of attorney fees is the relative financial standing of the parties.  Here, the record is replete with references to Mother's financial challenges.  The trial court's final order references:  (1) Mother's need for CCDF benefits; (2) her need to obtain Medicaid assistance to cover surgery bills exceeding $200,000; (3) her inability to maintain her second job as a school bus driver due to acute surgical

complications; (4) Father's considerable child support arrearage of nearly ten thousand dollars ($10,000); (5) Mother's "effective reduc[tion] [in] her income and [setback of] . . . several years in terms of career advancement" by relocating to Atlanta, app. p. 35; and (6) her weekly gross income of $480 as compared to Father's of $1,072.

[38] As we reasoned in *Haley,* in which we vacated an award of attorney fees to the father,

> [P]ermitting the awarding of attorney fees serves to insure equal access to the courts despite the relative financial conditions of the parties. There can be no assurance of equal access to the courts when a party, who is in the financial position of Mother, is required to pay the attorney fees of another who is in a superior financial state. While the trial court may order a party to pay a *reasonable* amount for attorney fees of the other party, the order here was not reasonable and is clearly against the logic and effects of the facts and circumstances before the court.

771 N.E.2d at 754.

[39] The instant facts are distinguishable from *Haley* in that this case involves Mother's violation of an express court order and failure to appear for a hearing. We certainly have no quarrel with the trial court's authority to punish such misconduct. That said, at the time of the hearing, Father was in a far superior financial position to Mother. Given Mother's well-documented, financial challenges, we find that the extent of the award of attorney's fees to Father was not reasonable and is clearly against the logic and effect of the facts and circumstances before the trial court.

[40] Moreover, Father's briefing regarding the trial court's award of attorney fees is entirely and inadequately comprised of the following: "[I]t follows that the trial courts [sic] sanction and award of attorney fees pursuant to I.C. 31-14-18-2 is reasonable and also supported by the record and not an error." Appellee's Br. p. 22. Father's failure to make cogent argument and to address this issue in a meaningful way is akin to failing to file a brief. In such a situation, we do not undertake the burden of developing an argument for the appellee. *See Tisdial v. Young,* 925 N.E.2d 783, 784-85 (Ind. Ct. App. 2010) ("We will reverse the trial court's judgment if the appellant presents a case of prima facie error."). We find that Mother has met the prima facie error standard.

[41] For the foregoing reasons, we reverse and remand with instructions to the trial court to determine a reasonable amount of attorney's fees to be paid by Mother as sanctions for violating the trial court's Order and for her misconduct in failing to appear for the December 7, 2016, hearing.[2]

## Conclusion

[42] We conclude that the trial court did not abuse its discretion in awarding physical custody and sole legal custody to Father or in denying Mother's motion to relocate; however, the trial court erred in awarding unreasonable

---

[2] The trial court's award to Father of $83.92 in lost wages was not addressed by either party and remains in effect.

attorney fees to Father. We affirm in part, reverse in part, and remand with instructions.

Affirmed in part, reversed in part, and remanded with instructions.

May, J., and Bradford, J., concur.